■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TRACY GRADY, Appellant. [838 NYS2d 207]—

Spain, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered August 14, 2001, upon a verdict convicting defendant of the crimes of attempted murder in the first degree (two counts), assault in the first degree, assault in the second degree, criminal use of a firearm in the first degree and criminal possession of a weapon in the second degree.

Following a jury trial, defendant was convicted on all counts of an indictment charging him with two counts of attempted murder in the first degree and other crimes stemming from his actions in the early morning hours of November 13, 1999 in shooting two uniformed officers of the City of Albany Police Department. The officers, now detectives, Thomas Shea and Stanley Nadoraski, testified at trial that they were on routine patrol in a marked police vehicle on North Swan Street in the City of Albany when they observed defendant, who was the subject of an outstanding domestic violence complaint signed by defendant's former girlfriend two days earlier; the complaint alleged that defendant had broken into her apartment in the middle of the night. After the officers exited their vehicle, Shea spoke with defendant concerning that incident while Nadoraski continued a radio communication with the desk officer to confirm the status of the complaint. When defendant was informed that they would need to arrest him and take him into custody, defendant initially pleaded with them not to arrest him. Defendant then became aggressive and resisted their efforts to place him in handcuffs; a protracted, violent struggle ensued, during which defendant punched, kicked, bit, head butted and wrestled with the officers, causing the trio to enter the street, crashing into nearby parked cars and stoops.

At one point in the struggle, defendant pushed Nadoraski while the officer was reaching for his pepper spray, causing Nadoraski to lose his balance and fall to the ground. Defendant then pushed Shea, causing him to strike a car and fall to the ground, during which defendant grabbed Shea's gun; as Shea started to get up, defendant shot him in the back near his shoulder and the bullet passed through and exited his body. Shea rolled near a parked car to take cover. Defendant then approached Nadoraski, who was still fallen, and fired two shots from about three feet away, striking him first in the face and then in the chest, causing life-threatening injuries. Defendant fled on foot with Shea's gun while Shea grabbed Nadoraski's gun, removing it from its holster, and fired several shots in

defendant's direction, but defendant was not hit; Shea returned to the police vehicle and summoned help. Shea's gun was recovered hours later at the apartment of a friend of defendant in the City of Troy, Rensselaer County, and ballistics tests confirmed that the bullets which struck Nadoraski had come from that gun. Defendant was apprehended by Detective Kenneth Wilcox in Atlanta, Georgia on January 15, 2000.

The People also called Kenneth Mackey, who testified that he observed the incident from across the street. Although he did not see the guns and was unable to identify the individuals involved, he described seeing an officer backing up prior to the first shots being fired; he then saw a black male who was wearing a black coat—as described by the officers at trial—point to the ground, and heard two to three shots ring out, and the black male fled. He saw the officer get up and go over to the other side of a car and call out that an officer was down, and run in the direction of the fleeing male.

Defendant did not testify at trial, but pursued alternate defense theories, including that he acted in self-defense and that the officers were shot by "friendly fire" rather than by defendant. Upon his convictions, defendant was sentenced to an aggregate prison term of 50 years to life. Defendant appeals.

As an initial matter, we discern no abuse of discretion in County Court's *Sandoval* ruling, which represented a carefully crafted compromise after appropriately balancing the probative value of each aspect of defendant's lengthy criminal history against the risk of unfair prejudice (*see People v Valderama*, 25 AD3d 819, 820-821 [2006], *lv denied* 6 NY3d 854 [2006]; *see also People v Hayes*, 97 NY2d 203, 208 [2002]). In so doing, the court precluded entirely the use of defendant's convictions for drug possession, criminal mischief, resisting arrest, reckless endangerment and assault; with regard to two other resisting arrest convictions, the court's compromise permitted inquiry only into the level of the convictions due to their factual similarity with the charged crimes (*see People v Long*, 269 AD2d 694, 696 [2000], *lv denied* 94 NY2d 950 [2000]; *see also People v Hayes, supra* at 208). The court allowed delving into the facts of three convictions—for burglary, drug selling and criminal contempt for intentionally violating a court order of protection—each of which the court correctly determined were reflective of defendant's willingness to place his interests above those of society and were, thus, relevant to defendant's credibility should he testify (*see People v Hayes, supra* at 207; *People v Sandoval*, 34 NY2d 371, 377 [1974]; *People v Oatman*, 12 AD3d 790, 791 [2004], *lv denied* 4 NY3d 747 [2004]; *People v Harris*,

304 AD2d 848, 849 [2003], *lv denied* 100 NY2d 582 [2003]; *People v Colon*, 307 AD2d 378, 380-381 [2003], *lv denied* 100 NY2d 619 [2003]).

Next, we find no merit to defendant's primary contention on appeal that County Court erred in denying his request for a justification jury charge (*see* Penal Law § 35.15; CJI2d[NY] Justification: Use of Deadly Physical Force in Defense of a Person). Viewing the evidence in the light most favorable to the accused, as we are bound to do (*see People v Petty*, 7 NY3d 277, 284 [2006]), we find, as County Court correctly determined, that, as a matter of law, defendant was not entitled to this charge because "no reasonable view of the evidence establishes the elements of the defense" (*People v Reynoso*, 73 NY2d 816, 818 [1988]; *see People v McManus*, 67 NY2d 541, 549 [1986]; *People v Watts*, 57 NY2d 299, 301 [1982]; *accord People v Bolling*, 7 NY3d 874, 875 [2006]; *People v Petty, supra* at 284; *see also* Penal Law § 35.05 [2] [last sentence]). As relevant here, the defense of justification permits one to use deadly force on another person when, and to the extent, one reasonably believes, subjectively, that it is necessary to defend oneself from what one reasonably believes to be the use or imminent use of deadly physical force, and a reasonable person in defendant's position would have held that belief under the circumstances, an objective consideration, unless the actor was the initial aggressor or was able to safely retreat (*see* Penal Law § 35.15 [2] [a]; *see also People v Watts, supra* at 301; *People v Damanski*, 39 AD3d 1023, 1024 [2007]; *People v Young*, 33 AD3d 1120, 1122-1123 [2006]; *see generally Matter of Y.K.*, 87 NY2d 430, 433-434 [1996]; *People v Reynoso, supra* at 818; *People v Goetz*, 68 NY2d 96, 115 [1986]).

With regard to defendant's subjective belief, defendant did not testify[1] and relied on the testimony of a female witness who observed part of this police encounter and the testimony of a male witness regarding a 1997 encounter between defendant and the police. However, none of the proffered testimony provided a sufficient basis for a jury to determine that defendant reasonably believed that he was in imminent danger of being subjected to deadly force at the time that he shot these officers (*see People v Fermin*, 36 AD3d 934 [2007]; *People v Watts*,

---

1. Of course, defendant was under no obligation whatsoever to testify and his proffer of inconsistent theories of defense did not disentitle him to a justification charge (*see People v Butts*, 72 NY2d 746, 750 [1988]; *People v Padgett*, 60 NY2d 142, 145-146 [1983]). Contrary to defendant's claims, County Court's denial of the requested charge was not in any respect premised upon defendant's failure to testify but, rather, was compelled by the absence of any reasonable view of the evidence which would support such a defense.

*supra* at 302; *cf. People v McManus, supra* at 549; *People v Pritchett,* 298 AD2d 411, 412 [2002]).

By all accounts, defendant was the initial aggressor who escalated a routine arrest into a violent confrontation. The officers had not drawn their weapons and Shea was unarmed and still at least partly on the ground when defendant shot him; Nadoraski was on the ground with his gun in his holster when he was shot first in the face and then in the torso, negating any claimed "reasonable belief" on defendant's part that the officers were about to use deadly force (*see People v Bolling, supra* at 875; *People v Ojar,* 38 AD3d 684, 685 [2007]; *People v Vecchio,* 240 AD2d 854, 855 [1997]; *cf. People v Francis,* 15 AD3d 318, 318 [2005], *lv denied* 4 NY3d 853 [2005]). Further, since the officers were down, one disarmed, there is no reasonable view of the evidence that defendant—who remained standing and uninjured—had no available avenue of safe retreat or even attempted to retreat (*see People v Taylor,* 23 AD3d 693, 694 [2005], *lv denied* 6 NY3d 818 [2006]; *People v Rodriguez,* 306 AD2d 686, 688 [2003], *lv denied* 100 NY2d 624 [2003]; *see also* Penal Law § 35.15 [2] [a]; *see generally People v Aiken,* 4 NY3d 324 [2005]).

The female defense witness testified to hearing yelling and a scuffle and to observing the officers attempt to restrain and arrest defendant, who was resisting. She described seeing one of the officers hitting defendant in the back and shoulder area with a black object during the struggle. However, she did not see the initial part of the encounter and, after making her limited observations, she went into a nearby bar and did not see the shooting minutes later or what immediately preceded it. Thus, her testimony did not establish either who was the initial aggressor, defendant's ability to retreat or the circumstances at the time that defendant used deadly force.

The testimony offered concerning the encounter in 1997 in which defendant was arrested by members of the Albany Police Department and sustained injures, and later pleaded guilty to resisting arrest, likewise failed to establish defendant's entitlement to the charge. While Nadoraski testified to assisting in that arrest, he denied striking defendant; Shea testified to arriving at the scene after defendant had been taken into custody. The record is devoid of any proof connecting either officer in any way to the alleged beating or to any misconduct or threats related to that prior incident which could have given rise to defendant's reasonable belief of imminent danger during this 1999 encounter (*cf. People v Petty,* 7 NY3d 277, 285 [2006], *supra*; *People v Young,* 33 AD3d 1120, 1123 [2006], *supra*). While "[a]

defendant's 'prior experiences' are not limited to those involving the victim[s], but instead may encompass any experiences of the defendant that logically bear on the defendant's subjective state of mind at the time of the charged crime" (*People v Douglas*, 29 AD3d 47, 51 [2006], *lv denied* 6 NY3d 847 [2006], quoting *People v Goetz, supra* at 114), County Court correctly ruled that the scant eyewitness account[2] offered by the defense regarding alleged wrongful treatment of defendant almost 2$^{1}/_{2}$ years earlier, which was not connected to these officers, would not support a jury finding that defendant reasonably believed at the time of these shootings that the officers' use of deadly force was imminent. Moreover, even if defendant held such a reasonable belief, "the jury could not rationally conclude that his reactions were those of a reasonable man acting in self-defense" (*People v Reynoso*, 73 NY2d 816, 818 [1988], *supra*; *see People v Goetz*, 68 NY2d 96 [1986], *supra*). Thus, defendant's request was properly denied.

With regard to defendant's claims that evidentiary errors occurred requiring reversal of his convictions and a new trial, we disagree. While defendant now contends that the People should not have been permitted to bolster Shea's credibility by eliciting from him testimony concerning past acts of heroism and his receipt of commendations, this claim is unpreserved as the objections at trial were solely premised upon relevancy (*see People v Mountain*, 66 NY2d 197, 203-204 [1985]). Further, County Court sustained the objections to the extent of precluding discussion of the particular facts of the incidents. Notably, the testimony was brief, did not constitute hearsay (*cf. People v Buie*, 86 NY2d 501, 516 [1995]), and was not improperly exploited in the prosecutor's summation (*cf. People v Brown*, 262 AD2d 570, 577 [1999] [Friedmann, J., dissenting], *affd on mem below* 95 NY2d 776 [2000]). To the extent that it constituted a premature or improper attempt to have the witness bolster his own credibility with evidence of good character (*see People v Pavao*, 59 NY2d 282, 288-290 [1983]; *see also People v Hanley*, 5 NY3d 108, 108-109 [2005]), we note that Shea's testimony and credibility were vociferously attacked, albeit subsequently, and the court specifically instructed the jury that the police testimony must be held to the same yardstick as ordinary witnesses in determining credibility. Thus, we find that any error was harmless in view of the overwhelming evidence of defendant's guilt (*see People v Crimmins*, 36 NY2d 230, 242 [1975]).

---

**2.** We also find no error in County Court's refusal to allow defendant's former girlfriend to testify regarding this 1997 incident, as the offer of proof established that she was not present at it and she was properly precluded from recounting defendant's hearsay statements stemming from it.

Next, the show of support for Nadoraski by uniformed members of law enforcement, who were seated in the back two rows of the courtroom and who stood in unison when he entered the courtroom to testify, was not appropriate because such conduct may have the secondary effect of influencing the jury (*see People v Levandowski*, 8 AD3d 898, 901 [2004]). However, defendant did not move for a mistrial or request that a curative instruction be given to the jury. County Court's denial of the defense's sole request, to remove the jurors and reprimand the officers, was premised on the court's observation that most jurors had not looked in the direction of the spectators and thus the request would only highlight the incident. In our view, the court's decision was a conscientious attempt to prevent the incident from influencing the jury further and we find no basis upon which to fault that ruling. Moreover, there was no suggestion that the incident was attributable to the prosecutor and we cannot conclude that it impaired defendant's right to a fair trial.

Further, given the security concerns raised by the prosecutor, the Albany County Sheriff and County Court as well, the court's order that an armed guard be positioned 10 feet away from one of defendant's witnesses, a convicted murderer recently sentenced to 25 years to life in prison and who also had pending murder charges, was eminently reasonable and did not undermine the witness's credibility so as to unduly prejudice defendant (*see People v Bryant*, 158 AD2d 808, 810 [1990], *lv denied* 76 NY2d 785 [1990]; *People v La Boy*, 91 AD2d 1102, 1103 [1983]; *cf. People v Compton*, 277 AD2d 913, 914 [2000], *lv denied* 96 NY2d 781 [2001]).

We have reviewed defendant's contentions regarding prosecutorial misconduct during summation and are unpersuaded that there was any impropriety which deprived him of a fair trial (*see People v Calabria*, 94 NY2d 519, 522-523 [2000]; *People v Tarantola*, 178 AD2d 768, 770 [1991], *lv denied* 79 NY2d 954 [1992]). The prosecutor's statement to the jury that they would not be instructed on self-defense due to the lack of evidence to support that defense was both accurate and a fair response to the theory pursued in defendant's entire defense—from opening statement through summation—that defendant's actions had been justified (*see People v Halm*, 81 NY2d 819, 821 [1993]). Concededly, some of the prosecutor's comments involved inappropriate name calling and references, or denigrated the defense. However, the defense for the most part did not timely object and we find that the remarks were, with few exceptions, fair comment on the evidence or in response to the theory of

the defense and its summation (*see People v Beyer*, 21 AD3d 592, 595 [2005], *lv denied* 6 NY3d 752 [2005]). While defendant now argues that some of these comments improperly shifted the burden of proof to him, defendant did not object on that ground (*see* CPL 470.05 [2]). We find that, under all of the circumstances, including the court's charge, any such slight implication did not operate here to deprive him of a fair trial (*see People v Edwards*, 38 AD3d 1133, 1134 [2007]; *People v Kirker*, 21 AD3d 588, 589-590 [2005], *lv denied* 5 NY3d 853 [2005]; *cf. People v Allen*, 13 AD3d 892, 898 [2004], *lv denied* 4 NY3d 883 [2005]).

Finally, defendant's sentence will not be disturbed. Concurrent sentences were not required for defendant's convictions on two counts of attempted first degree murder (*see* Penal Law § 70.25 [2]), as the jury's determination that defendant shot each officer constituted a finding of "separate and distinct acts" for which consecutive sentences are authorized (*People v Laureano*, 87 NY2d 640, 643 [1996]; *see People v Davis*, 23 AD3d 833, 835 [2005], *lv denied* 6 NY3d 811 [2006]; *accord People v Boone*, 30 AD3d 535, 536 [2006], *lv denied* 7 NY3d 810 [2006]; *People v Pritchett*, 29 AD3d 828, 828 [2006], *lv denied* 7 NY3d 793 [2006]; *cf. People v Rosas*, 8 NY3d 493 [2007]). Defendant provides no authority to support his contention that the sentencing procedure by which County Court determined that he was eligible for consecutive sentences—based upon the finding that he committed separate and distinct acts when he shot each of the officers—violates the principles underlying *Apprendi v New Jersey* (530 US 466, 490 [2000]). The existing authority is to the contrary (*see People v Pritchett, supra* at 829; *People v Smith*, 27 AD3d 242, 243-244 [2006], *lv denied* 7 NY3d 763 [2006]; *People v Lloyd*, 23 AD3d 296, 298 [2005], *lv denied* 6 NY3d 755 [2005]; *see also United States v White*, 240 F3d 127, 135 [2d Cir 2001], *cert denied* 540 US 857 [2003]; *People v Bryant*, 39 AD3d 768, 769 [2007]; *People v Nelson*, 36 AD3d 532, 534 [2007]; *People v Murray*, 37 AD3d 247 [2007]). We are not at all persuaded that the rationale of *Apprendi* supports defendant's contention. Further, in view of defendant's deliberate egregious conduct, we find neither an abuse of sentencing discretion nor extraordinary circumstances warranting a reduction of defendant's sentence in the interest of justice.

Cardona, P.J., Crew III, Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed.