(May 7, 2015)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS VALENTIN, Appellant. [8 NYS3d 317]—

Judgment, Supreme Court, Bronx County (Robert A. Sackett, J.), rendered September 28, 2011, convicting defendant, after a jury trial, of manslaughter in the first degree, and sentencing him, as a second felony offender, to a term of 20 years, reversed, on the law, and the matter remanded for a new trial.

In charging the jury on the justification defense, the court erred when, over defendant's objection, it included the initial aggressor exception to the defense embodied in Penal Law § 35.15 (1) (b). This concept, that defendant would not have been justified in using deadly physical force if he was the initial aggressor, was completely inapplicable to the facts of the case. Although the jury could have reasonably determined that defendant's use of deadly force was unjustified (where defendant used a gun against the deceased, who wielded a mop handle), it could not have reasonably found that defendant was the initial aggressor because the evidence does not support such a conclusion. There was no evidence that defendant was the first person in the fatal encounter to use or threaten the imminent use of deadly force, or any kind of force, for that matter. On the contrary, the evidence tended to indicate either that it was the deceased who first used force, by swinging a mop handle at defendant, or that defendant and the deceased used or threatened force simultaneously.

The dissent acknowledges the inconsistent testimony of Edward Hogan, a key prosecution witness, with regard to the sequence of the deceased swinging the mop handle and defendant withdrawing the gun from his jacket. Nevertheless, under no iteration of Hogan's description of the events can it be concluded that defendant withdrew the gun *before* the deceased swung the mop handle. At most, it can be said that defendant withdrew the gun simultaneously with the deceased's attack. To find that defendant was the initial aggressor would require a finding that he withdrew the gun (and threatened to use it) *before* the deceased swung the mop handle, an inference that cannot logically flow from Hogan's (inconsistent) testimony that both events happened simultaneously. There is no "concur-

rent aggressor" exception to the defense of justification. Accordingly, the court's initial aggressor charge was improper.

This error may not be deemed harmless. Defendant's justification defense presented a close question of whether defendant had a reasonable basis for his use of deadly force, and the charging error could have affected the verdict because the jury might have concluded that defendant was the initial aggressor and, thus, not entitled to a justification defense. Contrary to the dissent, a mop handle swung at a person's head may constitute "deadly physical force," defined as "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [11]). "Depending on how it is used, even a normally innocuous item may constitute 'deadly physical force'" (*People v Dodt*, 61 NY2d 408, 414 [1984]). Under the circumstances of this case, a jury could reasonably conclude that the deceased used or threatened to use deadly physical force against defendant by swinging the mop handle at him (*see id.*; *People v Ozarowski*, 38 NY2d 481, 491 n 3 [1976] [baseball bat used to strike victim's head was a "dangerous instrument"]) and that defendant reasonably believed he needed to use deadly physical force to defend himself (*see* Penal Law § 35.15 [2]).

Finally, although the evidence was far from overwhelming, the verdict was based on legally sufficient evidence and was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]), and thus there is no basis for dismissing the indictment. In light of our remand for a new trial, we do not address defendant's remaining contentions. Concur—Gonzalez, P.J., Acosta, Manzanet-Daniels and Clark, JJ.

Saxe, J., dissents in a memorandum as follows: I would affirm defendant's conviction for first-degree manslaughter.

Defendant was charged with murder in the second degree, attempted murder in the second degree, manslaughter in the first degree, attempted assault in the first degree, assault in the second degree, and criminal possession of a weapon in the second degree, for the fatal shooting of Justin McWillis and the non-fatal shooting of Edward Hogan on January 18, 2009.

The People's evidence at trial about the shooting primarily came from Edward Hogan, who acknowledged that the incident was connected to an incident from the previous night.

Defendant's mother, Maria Rivera, owned the house at 1504 Vyse Avenue, and rented an apartment in the house to the family of Anthony Jones; the house was protected by a locked iron gate.

A defense witness, Liliana Lara, who was also a tenant at 1504 Vyse Avenue, testified that she believed that the Jones family, like herself, had keys to the gate, but that Anthony Jones and his friends would regularly jump the gate to gain access to the property and engage in conduct requiring her to call the police, such as drinking and smoking marijuana. On the night of January 17, 2009, she saw a group of 10 to 15 men, including McWillis, chasing and cursing at defendant and his girlfriend as they ran towards the house. She saw one male holding a knife and McWillis pointing something metal that looked like a gun at defendant. She called 911, but never got the chance to speak to the officer who responded.

Officer Willie Colon testified that he drove to 1504 Vyse Avenue at 10:49 p.m. on January 17, 2009, to investigate a report about a dispute with a knife. He spoke with Maria Rivera, who said some young men had been trying to climb the gate in front of her house and had called her names, but she denied having seen a knife or other weapon. Defendant, who was present, demanded of Officer Colon that he make a report of the incident, but Colon declined to do so because there were no injuries or property damage. According to Officer Colon, defendant then said, "I know my 2nd Amendment rights to bear arms. If I put a bullet to one of these kids' heads you guys aren't going to do shit. I don't need the cops anymore. If I put a machete to any one of these kids' heads the cops aren't going to do shit."

Anthony Jones's sister, LaQuanda Carter, testified that Maria Rivera had refused to give the Jones family a key to the gate.

With regard to the night of the shooting, Edward Hogan testified that he was with his friend Justin McWillis, along with Anthony Jones and two others, when he saw defendant leave his house across the street at 1504 Vyse Avenue and head towards a bodega on the same side of the street. Hogan crossed the street and approached defendant, stating, "Let me speak to you for a second." Defendant replied, "What do you want, to get shot?," to which Hogan responded, "If I had [a] beef with you, I would have just popped off on you." After Hogan again asked to speak to him, defendant asked Hogan what he wanted. Hogan then brought up the incident from the previous night, and defendant complained that Anthony Jones and other kids had disrespected his mother by being loud and banging on the iron gate she had installed in front of the house.

As Hogan and defendant spoke, McWillis and his two other friends crossed the street and approached the bodega. As they

neared the entrance, defendant and McWillis locked eyes. Mc-Willis went inside, followed by defendant and then Hogan. Inside the bodega, defendant and McWillis got into an argument, and McWillis grabbed a mop handle.

Hogan went outside, followed by defendant and McWillis. Once outside, they continued to argue, but McWillis put down the mop handle. Hogan started to walk away, but turned to see McWillis pick up the mop handle again and walk towards defendant, who was heading back down the block towards his house. Hogan saw McWillis swing the mop handle at defendant, while, simultaneously, defendant reached into his unzipped jacket for his gun. The two men were close, about 18 inches apart. Defendant pointed the gun at Hogan and fired, hitting him in the right forearm, which was raised. Hogan then saw McWillis drop to the ground. McWillis died of a gunshot to the chest fired at close range.

Hogan's testimony as to the point at which McWillis swung the mop handle was inconsistent; at one point he stated that he was "pretty sure" that McWillis hit defendant "at the time before [defendant] shot me," but he also stated that he got shot before McWillis hit defendant with the stick, although he did not see McWillis make contact with defendant. When asked if McWillis hit defendant in the head with the stick from behind and if defendant then turned around, Hogan first said that he did not know, and then said, "That is not what happened." He also testified, "[Y]ou could say he hit him after I got shot; but when he hit him, the gun was already pulled out." However, Hogan acknowledged that 10 days after the shooting, he told an investigator that defendant was hit from behind before any shots were fired, and that he told police that defendant did not fire any shots until he was hit by McWillis.

Anthony Jones's sister, LaQuanda Carter, testified that she heard one gunshot and turned and then saw defendant shoot McWillis at close range.

Defendant was convicted only of the charge of manslaughter, relating to the death of Justin McWillis.

Discussion

Initially, I agree with the majority that there is no merit to defendant's contention that the evidence is legally insufficient. "Evidence of guilt is legally sufficient if the facts, viewed in the light most favorable to the People, provide a valid line of reasoning and permissible inferences from which the finder of fact could have rationally concluded that the elements of the crime were established beyond a reasonable doubt" (*People v Kancharla*, 23 NY3d 294 [2014]). Such a valid line of reasoning is available to support the verdict.

I also agree with the majority that defendant's weight of the evidence argument is not viable. Assuming arguendo that an acquittal would not have been unreasonable (*see People v Danielson*, 9 NY3d 342, 348 [2007]), the weight of the credible evidence supported the finding of guilt (*id.*). Defendant suggests that the weight of the evidence established that the shootings were justified in that it was McWillis who provoked a fight, having threatened him the night before as well as on the night in question, and that he only pulled out his gun after McWillis instigated the altercation with the mop handle, while Hogan, behind McWillis, raised his arm as if he were holding a gun, after having previously intimated that he was armed with a gun. However, another line of reasoning, far more reasonable, was that the altercation was entirely verbal until the moment when McWillis followed defendant out of the bodega and down the street and defendant turned around, and that regardless of when McWillis swung the mop handle, defendant's shooting of McWillis was an unjustified use of deadly physical force against a non-lethal threat.

I disagree with the majority's statement that the initial aggressor charge given by the trial court in relation to the justification defense constituted reversible error. The justification defense, applicable where the use of deadly force is justified in response to a reasonable belief that another is using or about to use deadly physical force (Penal Law § 35.15 [2] [a]), is available if the defendant was not the initial aggressor, or if, in spite of being the initial aggressor, the defendant withdraws from the encounter and effectively communicates that withdrawal to the other person (*see* Penal Law § 35.15 [1] [b]; *People v Petty*, 7 NY3d 277, 285 [2006]; *People v Mickens*, 219 AD2d 543 [1st Dept 1995], *lv denied* 87 NY2d 904 [1995]).

Contrary to the majority's assessment, in my view the initial aggressor charge was not completely inapplicable to the facts of the case. There was, in fact, evidence that it was defendant who was the first to use or threaten the imminent use of deadly force. For example, Hogan's admittedly inconsistent testimony included assertions that would have permitted the jury to find that when McWillis followed after defendant as he was walking away from the bodega, he held the mop handle but did not use or threaten to use it until defendant drew his gun. Nor would the jury have been misled into thinking that defendant could be viewed as the initial aggressor based on the verbal exchange that led up to the encounter; unlike the charge in *People v Baez* (118 AD2d 507 [1st Dept 1986]), the trial court's charge here clearly instructed that "[a]rguing[ ] [and] using

abusive language . . . unaccompanied by physical threats or acts does not make a person an initial aggressor and does not justify physical force."

The court also appropriately decided not to give the part of the initial aggressor charge allowing an initial aggressor to rely on the justification defense *if* he "had withdrawn from the encounter and effectively communicated such withdrawal (Penal Law § 35.15 [1] [b]." Although defendant walked away from the earlier verbal interchange, there was no evidence that he withdrew from the encounter at the point in the events when the verbal encounter turned (or threatened to turn) physical, the point at which defendant could have been found to be the initial aggressor.

More importantly, however, even if that portion of the charge was erroneous, the error did not constitute a due process violation; indeed, it could have had no ultimate impact. No matter what the court charged in relation to the initial aggressor issue, there was simply no evidentiary support for a finding that defendant was justified in using deadly physical force against McWillis when faced with McWillis's either threatened or actual use of a mop handle. The use of deadly physical force is only justified in response to a reasonable belief that another is using or about to use deadly physical force (Penal Law § 35.15 [2] [a]). Even assuming that the use of a mop handle could conceivably cause death or serious physical injury, the manner in which McWillis wielded the mop handle, by swinging it, does not qualify as creating a threat of deadly physical force. The jury could not reasonably have concluded, even taking into account his particular circumstances, that defendant could have reasonably believed that he was in deadly peril from McWillis at the time he shot him.