This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 33
The People &c.,
          Appellant,
        v.
Carlos Valentin,
          Respondent.

Virginia A. Marciano, for appellant.
Robert S. Dean, for respondent.

ABDUS-SALAAM, J.:

        The trial court did not commit reversible error by including an initial aggressor exception in its justification charge. As there was a reasonable view of the evidence that defendant was the initial aggressor in the use of deadly physical force, this factual determination was properly before the jury.

- 1 -

The order of the Appellate Division should therefore be reversed.

I.

Defendant was charged with murder in the second degree, attempted murder in the second degree, manslaughter in the first degree, attempted assault in the first degree, assault in the second degree, and criminal possession of a weapon in the second degree for fatally shooting Justin McWillis and shooting Edward Hogan in the arm. Hogan was the People's primary witness at trial.

These three men were known to each other. McWillis and Hogan were friends of defendant's mother's tenant. Defendant and his mother had grown increasingly frustrated with these young men congregating around their house. They alleged the men were using and selling drugs and instilling fear in the block's residents. Defendant and his mother had repeatedly called the police to report the issue, but responding officers usually advised that there was nothing they could do. The night before the shooting, after the police informed defendant they could not arrest anyone because there was no evidence of any criminal activity, defendant told an officer "I know my Second Amendment rights to bear arms. If I put a bullet to one of these kids' heads you guys aren't going to do s**t. I don't need the cops anymore."

The following day, defendant left his house and approached a nearby bodega. He had a loaded firearm concealed under his jacket. Hogan and McWillis saw him from across the

street. Hogan approached defendant and said "let me speak to you for a second," to which defendant replied "what do you want, to get shot?" Hogan and defendant then discussed the incident from the previous evening, and defendant complained about the group of men disrespecting his mother. McWillis and two others then crossed the street, and McWillis entered the bodega. Hogan and defendant followed him inside, defendant and McWillis got into an argument in the bodega, and McWillis grabbed a mop handle.

According to Hogan, defendant and McWillis continued to argue as they exited the bodega, but as defendant was walking away from McWillis, back toward his house, McWillis at some point put down the mop handle. Hogan then saw McWillis pick up the mop handle again and approach defendant. Hogan's testimony is inconsistent as to the exact sequence of events that followed: at some point, McWillis swung the mop handle at defendant, and defendant pulled a gun out of his open jacket, shot Hogan in his raised arm, and fatally shot McWillis, hitting him in the chest at close range.

At times during Hogan's testimony, he indicated that defendant took out the gun only after McWillis swung the mop handle. Several other times, however, he described the actions as simultaneous. But at one point, Hogan testified that as defendant "was pulling out, Justin was swinging. I guess, well, you could say he hit him [with the mop handle] after I got shot; but when he hit him, the gun was already pulled out." Hogan stated that

the entire series of events took mere seconds.

The trial court charged the jury on justification. Over defendant's objection, the court included language from the standard Criminal Jury Instructions regarding the initial aggressor exception:

> "[N]otwithstanding the rules [of justification] that I have just explained, the Defendant would not be justified in using deadly physical force under the following circumstances: No. 1, the Defendant would not be justified if he was the initial aggressor. Initial aggressor means the person who first attacks or threatens to attack, that is to say, the first person who uses or threatens the imminent use of offensive physical force. The actual striking of the first blow or inflicting of the first wound, however, does not necessarily determine who was the initial aggressor. A person who reasonably believes that another is about to use deadly physical force upon him need not wait until he is struck or wounded. He may, under such circumstances, be the first to use deadly physical force so long as he reasonably believed it was about to be used against him. He is then not considered to be the initial aggressor under those circumstances, even though he strikes the first blow or inflicts the first wound. Arguing, using abusive language, calling a person names or the like unaccompanied by physical threats or acts does not make a person an initial aggressor and does not justify physical force."

Defendant was convicted of manslaughter in the first degree. The Appellate Division, with one Justice dissenting, reversed, holding that the trial court improperly instructed the jury on the initial aggressor exception to justification (128 AD3d 428 [1st Dept 2015]). The dissenting Justice granted leave

to appeal, and we now reverse and remit to the Appellate Division for consideration of the issues raised but not determined on the appeal to that court.

II.

"It is well settled that, '[i]n evaluating a challenged jury instruction, we view the charge as a whole in order to determine whether a claimed deficiency in the jury charge requires reversal'" (People v Walker, 26 NY3d 170, 174 [2015], citing People v Medina, 18 NY3d 98, 104 [2011]). In reviewing a trial court's charge, reversal is only appropriate if "the charge, 'read . . . as a whole against the background of the evidence produced at the trial,' likely confused the jury regarding the correct rules to be applied in arriving at a decision" (id. at 174-175, quoting People v Andujas, 79 NY2d 113 [1992]). It is uncontested that a justification charge pursuant to Penal Law § 35.15 was appropriate in this case. In the context of that self-defense charge, an initial aggressor instruction was warranted because the charge was requested and there was an issue of fact on the point.

Hogan's testimony and timeline placed into issue whether defendant or McWillis was the initial aggressor as to the use of deadly force, especially when considering the brevity and intensity of the altercation. Certainly, there is a reasonable view of the evidence that McWillis was the initial aggressor as to physical force, because he picked up the mop handle and

followed defendant before defendant ever used or threatened the use of a gun. However, the jury also could have reasonably concluded that defendant was the initial aggressor as to the use of deadly physical force, because he pulled out his loaded gun and shot Hogan and McWillis before McWillis in fact threatened him with the mop. And while there are instances where a "normally innocuous item may constitute 'deadly physical force'" (see dissenting op at 3; People v Dodt, 61 NY2d 408, 414 [1984]), under these circumstances, the jury reasonably could have concluded that the swinging mop handle did not. Thus, the court properly instructed the jury on the definition of an initial aggressor under Penal Law § 35.15.

Notably, the instruction given did not imply or suggest that defendant was the initial aggressor. Rather, the initial aggressor charge explained the law that defendant, in using deadly physical force, was not required to wait until he was struck or wounded if he reasonably believed that deadly force was about to be used against him. Under the charge given, if the jury found the use of the mop handle was deadly physical force, defendant would not be the initial aggressor. The charge, which aided the jury in understanding justifiable use of force in self-defense under Penal Law § 35.15, was properly given based on the evidence, and there is no deficiency requiring reversal.

Here, as the Appellate Division dissent noted, "[n]o matter what the court charged in relation to the initial

aggressor issue, [the jury could have reasonably concluded] there was simply no evidentiary support for a finding that defendant was justified in using deadly physical force against McWillis when faced with McWillis's either threatened or actual use of a mop handle" (Valentin, 128 AD3d at 433 [dissenting op.]). Our law has "never required that an actor's belief as to the intention of another person to inflict serious injury be correct in order for the use of deadly force to be justified, but [it has] uniformly required that the belief comport with an objective notion of reasonableness" (People v Goetz, 68 NY2d 96, 107 [1986]). Thus, the jury could have concluded that defendant's choice to respond to a swinging plastic mop handle with a loaded and operable gun was not reasonable, especially in light of his prior comments to police about taking the law into his own hands.

Accordingly, the order of the Appellate Division should be reversed, and the case remitted to that court for consideration of the issues raised but not determined on the appeal to that court.

People v Carlos Valentin

No. 33

STEIN, J.(dissenting):

No reasonable view of the evidence could support a finding that defendant was the initial aggressor. Because this case hinged on a justification defense, defendant was prejudiced by the trial court's error of including the initial aggressor exception in its justification charge. Accordingly, I respectfully dissent, and would affirm the Appellate Division order remitting for a new trial.

There is no dispute that defendant used deadly physical force and that a justification charge was appropriate here. The trial court's instruction on justification properly began with the basic premise of that defense in the context of deadly force: "[u]nder our law a person may use deadly physical force upon another individual when and to the extent that he reasonably believes it to be necessary to defend himself from what he reasonably believes to be the use or imminent use of unlawful deadly physical force by such individual." Under appropriate circumstances, the basic justification charge may be supplemented by instructions regarding one or more statutory exceptions to that defense, including the initial aggressor exception (see Penal Law § 35.15 [1]). However, in order to avoid confusing the

- 1 -

jury, a trial court should supplement the basic justification charge with only those exceptions that are, or may be, applicable under the facts of the particular case (see CJI2d[NY] Defense, Justification: Use of Deadly Physical Force in Defense of a Person).

Although there was neither evidence to support, nor any necessity for, an initial aggressor supplement to the basic justification charge, the court further charged the jury that, "notwithstanding" the explanation just given regarding justification, "[d]efendant would not be justified in using deadly physical force . . . if he was the initial aggressor. Initial aggressor means the person who first attacks or threatens to attack, that is to say, the first person who uses or threatens the imminent use of offensive physical force," although a person may protect himself or herself prior to the other person actually striking the first blow.

Giving the instruction regarding this exception was error because there was insufficient record evidence from which the jury could conclude that defendant was the initial aggressor (see Penal Law § 35.15 [1] [b]). Additionally, because of the extensive use made by the People of that erroneously-given initial aggressor instruction, defendant was most certainly prejudiced.

I.

Initially, the People assert that, because the plastic

mop handle used by the victim was flimsy, its use could not constitute deadly force. The majority acknowledges that the swinging of a mop handle may, under particular circumstances, reasonably be viewed as presenting a threat of deadly physical force (see majority op at 6). Nonetheless, the dissenting justice at the Appellate Division, with whom the majority here now agrees, concluded that "there was simply no evidentiary support for a finding that defendant was justified in using deadly physical force against [Justin] McWillis when faced with McWillis's either threatened or actual use of a mop handle" (128 AD3d 428, 433 [1st Dept 2015] [Saxe, J., dissenting]).

In evaluating the justification defense, "[t]he critical focus must be placed on the particular defendant and the circumstances actually confronting him [or her] at the time of the incident, and what a reasonable person in those circumstances and having defendant's background and experiences would conclude" (People v Wesley, 76 NY2d 555, 559 [1990]; see People v Umali, 10 NY3d 417, 425 [2008], cert denied 556 US 1110 [2009]). Defendant had recently been terrorized by McWillis and his friends, in situations requiring police contact. Moreover, the record before us is bereft of any evidence that defendant ever held the mop handle or otherwise knew it was made of plastic, as opposed to wood or some other substantial material. Nor does the evidence reflect whether defendant was initially aware of whether the metal bracket used to attach a mop head was on the end of the

handle being held by McWillis or on the end being swung at
defendant.  This Court has previously recognized that,
"[d]epending on how it is used, even a normally innocuous item
may constitute 'deadly physical force'" (People v Dodt, 61 NY2d
408, 414 [1984]).

Deadly physical force is defined as "physical force
which, under the circumstances in which it is used, is readily
capable of causing death or other serious physical injury," which
can include serious and protracted disfigurement (Penal Law §
10.00 [11], [10]).  Like a baseball bat swung at a person, which
can constitute deadly physical force (see People v Ozarowski, 38
NY2d 481, 491 n 3 [1976]), swinging a mop handle could easily
fall within that definition.  Consistent with the majority's
acknowledgment -- that whether use or threatened use of a mop
handle could reasonably be viewed as deadly physical force is
generally a factual question (see majority op at 6) -- the
circumstances here presented a factual question for the jury as
to whether defendant's use of deadly physical force was
reasonable (i.e., whether such use was justified).  That
question, however, is separate and distinct from the question of
whether defendant was the initial aggressor in the conflict (see
People v Petty, 7 NY3d 277, 285 [2006]), and, on this record, the
latter question should not have been submitted to a jury.

If the jury were to find -- as the majority does --
that McWillis's use or threatened use of the mop handle did not

constitute deadly physical force, defendant would not have been justified in responding with deadly physical force. In that case, the basic justification charge would be sufficient to allow the jury to conclude whether that defense was available to defendant, and no reference to the initial aggressor exception was necessary or appropriate. If, on the other hand, the jury were to find that the use or threatened use of the mop handle did constitute deadly physical force, the sole remaining question relevant to the applicability of the initial aggressor exception would be who first used or threatened the imminent use of deadly force. In that case, the initial aggressor charge was still inappropriate here because there was no reasonable view of the evidence to support a finding that defendant was the initial aggressor.

The majority accurately describes the record facts leading up to the final confrontation at issue. In short, after defendant and McWillis had a verbal argument, during which McWillis grabbed the mop handle and defendant did not respond with any type of weapon, McWillis put the mop handle down. When defendant began to walk away in the direction of his home, McWillis again picked up the mop handle and approached defendant from behind. The evidence regarding what happened next came from Edward Hogan, the only testifying eyewitness. Hogan testified that he was not sure about the timing of events. However, he testified several times that McWillis was swinging the mop handle

at defendant at the same time that defendant was pulling out the gun; _i.e.,_ that the two actions occurred simultaneously.  Under the charge as given, if McWillis swung the mop handle at defendant either before or at the same time that defendant pulled out the gun, defendant could not be considered the initial aggressor.

In support of its position that the initial aggressor charge was properly given, the People refer to two portions of the record.  In one cited portion, the prosecutor asked Hogan, "Now, at the time that you were being shot by the defendant and your arm was up, was [McWillis] doing something with the mop or had he already done something with the mop?"  Hogan responded, "I really don't remember as far as if it was before or after, but like I said, it was like -- it was, to me, as my memory, it was basically simultaneously.  He was pulling out, [McWillis] was swinging.  I guess, well, you could say he hit him after I got shot; but when he hit him, the gun was already pulled out."

Hogan's repeated insistence that the swinging of the mop handle and defendant pulling out the gun occurred simultaneously forecloses any reading of this testimony as establishing that defendant shot before he was threatened.  The People's view of this rambling answer, which view is accepted by the majority, ignores any distinction between the initial swinging of the mop handle and the actual hit, when the handle made a connection with its intended target -- defendant.  Hogan

also testified that the entire series of events -- consisting of McWillis swinging the mop handle, defendant pulling out the gun, Hogan getting shot, and McWillis getting shot and falling down -- happened very quickly, within a matter of a few seconds. Hogan's testimony is insufficient to establish that defendant pulled out the gun before McWillis held the mop handle in a threatening manner or started to swing it at defendant, as opposed to when it actually struck defendant. Thus, according to this portion of Hogan's testimony, defendant would not have been the initial aggressor, as long as he reasonably believed that McWillis was first using or threatening the imminent use of deadly physical force against him.

In the other portion of the record cited by the People, Hogan testified that McWillis swung the mop handle at defendant at the same time that Hogan got shot. From this testimony, an inference could conceivably be drawn that defendant had the gun out before McWillis began swinging. However, in response to the next substantive question, Hogan clarified that defendant was pulling out the gun as McWillis was swinging the mop handle at him. This indicates either that the mop handle was in motion and being swung at defendant (i.e., its imminent use against him was at least threatened) before defendant pulled out the gun, or that defendant and McWillis acted simultaneously. Under either of those scenarios, defendant would not be the initial aggressor.

In sum, the jury could have found that defendant was

the initial aggressor only if it relied on a misreading of a snippet of Hogan's testimony and disregarded his repeated assertion that defendant and McWillis acted simultaneously. Because no <u>reasonable</u> view of the evidence would support a finding that defendant was the initial aggressor, Supreme Court should not have instructed the jury regarding that exception to the justification defense.

## II.

I agree with the Appellate Division majority's conclusion that the court's error in instructing the jury regarding the initial aggressor exception was not harmless.  The charge, as given, "likely confused the jury regarding the correct rules to be applied in arriving at a decision" regarding that defense (<u>People v Walker</u>, 26 NY3d 170, 174-175 [2015], citing <u>People v Andujas</u>, 79 NY2d 113 [1992]), "'such that the degree of precision required for a jury charge was not met'" (<u>Walker</u>, 26 NY3d at 177, quoting <u>People v Medina</u>, 18 NY3d 98, 104 [2011]). This is so, in particular, because of the way the prosecutor portrayed what actions would be sufficient to classify defendant as an initial aggressor -- many of which arguably fell within the court's initial aggressor instruction -- so that a jury following that instruction could well have concluded that, even if defendant pulled his gun out and shot McWillis after being threatened with a deadly weapon, he was not entitled to the defense of justification.

The prosecutor, in summation, argued that there were nine different facts, each independently sufficient to establish that defendant was the initial aggressor, thus depriving him of the defense of justification. Those facts included that: "the defendant chose to arm himself with a loaded .22 handgun"; "he hides the gun in the jacket"; "it's cold enough to snow, but he's outside . . . [with his] jacket . . . unzipped"; he asked Hogan "do you want to get shot"; defendant "is a grown man . . . staring at an 18 year old." None of these facts would, as a matter of law, make defendant the initial aggressor, but each could have been erroneously interpreted by the jury as the initial "threat[] to attack." As to these and several other statements and actions of defendant, the prosecutor's argument was incorrect and misleading,[1] and reliance thereon could have

---

[1] The People misconstrued this Court's decision in People v Petty (7 NY3d 277, 285 [2006]). While not entirely clear, it is possible that Supreme Court was also misled by one of our statements therein. In that case, we stated that "[w]hen justification is in issue, the trier of fact must first determine whether the defendant was the initial aggressor" (id.). That sentence does not mean that the initial aggressor instruction must be given in every case where justification is asserted as a defense. Rather, that instruction should be given only when there is sufficient evidence to require it. Based on the circumstances present in Petty, proof of prior threatening statements by the defendant was allowed into evidence because it bore on the likelihood that the defendant was in fact the initial aggressor -- not that the statements themselves constituted acts of aggression sufficient to deprive the defendant of the justification defense, which is how the prosecutor used the prior threats here. Contrary to the People's summation, however, prior verbal threats, by themselves, do not make a person the initial aggressor. Likewise, the fact that defendant armed himself with

led the jury to find that defendant was the initial aggressor despite a lack of record evidence for such a finding.

More specifically, the potential for such a result was exacerbated by the error introduced by the court's instruction, which suggested that "notwithstanding" defendant's establishment of a justification defense, the jury should convict him if he was the initial aggressor.  This is exemplified by the following: if the jury concluded that defendant was first threatened with the mop handle and that the mop handle was a deadly weapon (and defendant was, therefore, entitled to the defense of justification), the jury may nevertheless have concluded that, because defendant had previously asked Hogan if he wanted to get shot, defendant was the "person who first . . . threaten[ed] to attack" and, thus, could not assert the defense of justification. The jury could reasonably come to this conclusion by literally interpreting the instructions given, in combination with the prosecutor's incorrect explication of what behavior would qualify defendant as an initial aggressor.

Additionally, the notes submitted to the court by the jury during deliberations indicate that the jurors had a difficult time deciding the case, lending further support to the conclusion that there is a reasonable possibility that the verdict would have been different had the charge not included the

a gun, standing alone, did not make him the initial aggressor.

initial aggressor exception.  Because the error was not harmless,

defendant should be given a new trial.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed and case remitted to the Appellate Division, First
Department, for consideration of issues raised but not determined
on appeal to that court.  Opinion by Judge Abdus-Salaam.  Chief
Judge DiFiore and Judges Fahey and Garcia concur.  Judge Stein
dissents and votes to affirm in an opinion in which Judges Rivera
and Wilson concur.


Decided March 30, 2017