People v Wilkinson (2018 NY Slip Op 08206)





People v Wilkinson


2018 NY Slip Op 08206


Decided on November 29, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 29, 2018

109080

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
RANDY K. WILKINSON, Appellant.

Calendar Date: October 17, 2018

Before: Garry, P.J., McCarthy, Lynch, Aarons and Rumsey, JJ.


Adam G. Parisi, Schenectady, for appellant.
Patrick A. Perfetti, District Attorney, Cortland (Elizabeth McGrath of counsel), for respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Appeal from a judgment of the County Court of Cortland County (Ames, J.), rendered June 14, 2016, upon a verdict convicting defendant of the crimes of murder in the second degree and criminal possession of a weapon in the fourth degree (two counts).
Defendant was charged with murder in the second degree and criminal possession of a weapon in the fourth degree (two counts) after he caused the victim's death by striking him in the head with a wooden cutting board and stabbing him with a knife. County Court denied defendant's motion to dismiss the indictment on the ground that a grand juror had a friendship with a witness. Following a Huntley hearing, the court found, among other things, that defendant did not have standing to contest a police search of his mother's apartment, in which he had been found with the victim's body. Defendant was convicted as charged after a jury trial and sentenced to a prison term of 25 years to life on the murder conviction and concurrent terms on the weapon possession convictions. Defendant appeals.
County Court properly denied defendant's motion to dismiss the indictment. A grand jury proceeding is defective when "the integrity thereof is impaired and prejudice to the defendant may result" (CPL 210.35 [5]). Dismissal of an indictment on this basis "is a drastic, exceptional remedy and 'should thus be limited to those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the [g]rand [j]ury'" (People v Moffitt, 20 AD3d 687, 688 [2005], lv denied 5 NY3d 854 [2005], quoting People v Huston, 88 NY2d 400, 409 [1996]; accord People v Farley, 107 AD3d 1295, 1295 [2013], lv denied 21 NY3d 1073 [2013]). Although potential prejudice may result from "a close relationship between a grand juror and a witness" (People v Revette, 48 AD3d 886, 887 [2008]), we find no such potential in the circumstances presented here.
Upon defendant's motion to inspect the grand jury minutes, County Court released an excerpt in which a grand juror testified that one of the witnesses, a detective sergeant, was a [*2]friend. The grand juror had known the witness for 20 years and spoke with her every other week. Upon further questioning, the grand juror denied having ever discussed police work or this case with the witness, and confirmed the complete lack of information about the facts in this case. When asked whether the friendship with this witness would prevent the grand juror from being fair and impartial, the grand juror responded, "I don't believe so, no." The prosecutor further inquired, "You're not concerned about that?" and the grand juror responded, "No."
Terms such as "believe" or "think" are "not . . . talismanic word[s] that automatically make[] a statement equivocal" in every situation (People v Chambers, 97 NY2d 417, 419 [2002]; accord People v Shulman, 6 NY3d 1, 28 [2005], cert denied 547 US 1043 [2006]). Here, any doubt as to the grand juror's impartiality that was raised by the initial response was dispelled by the unequivocal response to the prosecutor's immediate follow-up question, as well as the statements that the witness had never discussed police work or this case (see People v Farley, 107 AD3d at 1295-1296). Moreover, our review of the grand jury minutes demonstrates that the testimony of this witness was limited in scope and was not so significant as to affect the grand jury's determination, particularly when considered in the context of the testimony of several other witnesses who provided more significant evidence. Finally, we note that the grand jury's vote to indict defendant was unanimous, and that defendant's argument that the grand juror who knew the witness might have influenced the rest of the grand jury is premised solely upon speculation. Based "on the particular facts of [this] case, including the weight and nature of the admissible proof adduced to support the indictment and the degree of inappropriate prosecutorial influence or bias," we find that the motion to dismiss the indictment was properly denied (People v Huston, 88 NY2d at 409; see People v Farley, 107 AD3d at 1295-1296; compare People v Revette, 48 AD3d at 887-888).
Defendant next contends that County Court erred in discharging a juror who became ill during the trial. A sworn juror may be discharged in such circumstances when the court conducts "a reasonably thorough inquiry" and, as pertinent here, "determines that there is no reasonable likelihood" that the juror will be able to resume service "within two hours of the time set by the court for the trial to resume" (CPL 270.35 [2] [a]; see People v Jeanty, 94 NY2d 507, 514 [2000]). On a Thursday morning early in the trial, a juror "slumped over" during testimony, having lost consciousness. The jury was excused, emergency medical personnel were summoned, and the juror was revived. After consulting with counsel, the court questioned the juror and the EMT who provided treatment, and allowed defense counsel an opportunity to also ask questions. It was established that the juror was suffering from "flu or some kind of bug" that he thought he had caught from a potential juror who had earlier been excused. After feeling ill on Monday, the juror had reported to a court employee on Tuesday that he was not feeling well and was not sure whether he could continue. The juror returned to court on Wednesday and Thursday, although he continued to feel ill, and had been limiting his intake of food and water because he did not want his symptoms to interrupt the trial. The EMT stated that the juror was still ill, that his condition might be contagious, that his lapse of consciousness could recur, and that the EMT could not estimate when the juror might be well enough to continue. The EMT recommended that the juror should be transported to a hospital emergency room for treatment, but the juror decided to consult his own doctor instead. The court allowed the juror to depart, and directed that he call later to find out whether he should return.
Approximately an hour after the juror's condition was discovered, County Court decided, over defendant's objection, to discharge the juror and replace him with an alternate. In rendering this decision, the court noted that the juror had missed an unknown amount of testimony before his loss of consciousness was noticed and, given his illness, might not have been fully alert the day before (see CPL 270.35 [2] [b]). The court further found that it was not possible to ascertain when the juror would recover, but that it was clear that he would not do so imminently. Finally, the court noted the concern that the illness could spread to other jurors. Contrary to defendant's argument, CPL 270.35 (2) (a) did not require the court to wait two hours after the juror's departure before making this determination in these circumstances. The court conducted a reasonably thorough inquiry. This provided a sound basis for the conclusion that there was no reasonable likelihood that the juror would be able to return within two hours after [*3]the trial resumed. Thus, the court did not abuse its "significant discretion" in discharging the juror (People v Jeanty, 94 NY2d at 516-517; see People v Cruz, 48 AD3d 205, 206 [2008], lv denied 10 NY3d 957 [2008]).
County Court properly found that defendant did not have standing to contest the search of his mother's apartment. It was defendant's burden to show that he had standing, which exists when a defendant has "a legitimate expectation of privacy in the searched premises" (People v Jones, 155 AD3d 1103, 1105 [2017] [internal quotation marks and citation omitted], lv denied 30 NY3d 1106 [2018]; see People v Tejada, 81 NY2d 861, 862 [1993]; People v Wesley, 73 NY2d 351, 358-359 [1989]). The suppression hearing testimony established that defendant's mother leased the apartment and that, although defendant had previously stayed there, he was not permitted to live there by the owner. After being warned several times that the mother could be evicted due to his presence, defendant told the property manager that he was moving out. He was seen removing his belongings and thereafter applied for temporary public housing as he could no longer reside with his mother. The mother, who was out of state at the time of the crime, told police by telephone that defendant was not permitted to spend the night in the apartment, although she allowed him to enter during the day to get his belongings. Defendant had no keys to the apartment, and there was no evidence that he paid rent or shared other expenses. A relative testified that defendant had been able to gain access to the apartment on the night of the crime because a neighbor had lent him a key. Defendant did not establish that he had a legitimate expectation of privacy as an overnight guest in the apartment, as he was not "there with the permission of his host" (Minnesota v Olson, 495 US 91, 99 [1990]; see generally People v Wiggins, 126 AD3d 1229, 1231-1232 [2015]). Given the undisputed evidence that he was forbidden to reside in the apartment or to spend the night there, defendant did not establish that his family relationship with the mother or any other circumstances gave rise to a sufficient connection to the premises to establish a legitimate expectation of privacy therein (see People v Ponder, 54 NY2d 160, 164-166 [1981]; People v Hornedo, 303 AD2d 602, 602 [2003], lv denied 100 NY2d 595 [2003]; People v Walker, 150 AD2d 408, 408-409 [1989], lvs denied 74 NY2d 848, 853 [1989]).
Defendant failed to preserve his claims that he was denied a fair trial as a result of improper comments during the prosecutor's summation (see People v Scippio, 144 AD3d 1184, 1187-1188 [2016], lv denied 28 NY3d 1150 [2017]) and that County Court failed to give a circumstantial evidence charge (see People v Ash, 162 AD3d 1318, 1322 [2018], lv denied 32 NY3d 1002 [2018]). We are unpersuaded by defendant's assertion that these preservation failures deprived him of the effective assistance of counsel. The challenged prosecutorial remarks were fair comments on the evidence (see People v Hopkins, 56 AD3d 820, 821 [2008]; People v Grady, 40 AD3d 1368, 1374 [2007], lv denied 9 NY3d 923 [2007]), we find no error in the jury charge (see People v Wlasiuk, 136 AD3d 1101, 1104-1105 [2016], lv denied 27 NY3d 1009 [2016]), and refraining from making motions or requests for relief that would be futile does not constitute ineffective assistance (see People v Caban, 5 NY3d 143, 152 [2005]). Viewed in its totality, the record reveals that counsel's representation was vigorous and cohesive and that defendant received meaningful representation (see generally People v Baldi, 54 NY2d 137, 147 [1981]).
McCarthy, Lynch, Aarons and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.