*59 OPINION OF THE COURT
Abdus-Salaam, J.
The trial court did not commit reversible error by including an initial aggressor exception in its justification charge. As there was a reasonable view of the evidence that defendant was the initial aggressor in the use of deadly physical force, this factual determination was properly before the jury. The order of the Appellate Division should therefore be reversed.
L
Defendant was charged with murder in the second degree, attempted murder in the second degree, manslaughter in the first degree, attempted assault in the first degree, assault in the second degree, and criminal possession of a weapon in the second degree for fatally shooting Justin McWillis and shooting Edward Hogan in the arm. Hogan was the People’s primary witness at trial.
These three men were known to each other. McWillis and Hogan were friends of defendant’s mother’s tenant. Defendant and his mother had grown increasingly frustrated with these young men congregating around their house. They alleged the men were using and selling drugs and instilling fear in the block’s residents. Defendant and his mother had repeatedly called the police to report the issue, but responding officers usually advised that there was nothing they could do. The night before the shooting, after the police informed defendant they could not arrest anyone because there was no evidence of any criminal activity, defendant told an officer “I know my 2nd Amendment rights to bear arms. If I put a bullet to one of these kids’ heads you guys aren’t going to do s**t. I don’t need the cops anymore.”
The following day, defendant left his house and approached a nearby bodega. He had a loaded firearm concealed under his jacket. Hogan and McWillis saw him from across the street. Hogan approached defendant and said “[l]et me speak to you for a second,” to which defendant replied “[w]hat do you want, to get shot?” Hogan and defendant then discussed the incident from the previous evening, and defendant complained about the group of men disrespecting his mother. McWillis and two others then crossed the street, and McWillis entered the bodega. Hogan and defendant followed him inside, defendant and McWillis got into an argument in the bodega, and McWillis grabbed a mop handle.
*60 According to Hogan, defendant and McWillis continued to argue as they exited the bodega, but as defendant was walking away from McWillis, back toward his house, McWillis at some point put down the mop handle. Hogan then saw McWillis pick up the mop handle again and approach defendant. Hogan’s testimony is inconsistent as to the exact sequence of events that followed: at some point, McWillis swung the mop handle at defendant, and defendant pulled a gun out of his open jacket, shot Hogan in his raised arm, and fatally shot McWillis, hitting him in the chest at close range.
At times during Hogan’s testimony, he indicated that defendant took out the gun only after McWillis swung the mop handle. Several other times, however, he described the actions as simultaneous. But at one point, Hogan testified that as defendant “was pulling out, Justin was swinging. I guess, well, you could say he hit him [with the mop handle] after I got shot; but when he hit him, the gun was already pulled out.” Hogan stated that the entire series of events took mere seconds.
The trial court charged the jury on justification. Over defendant’s objection, the court included language from the standard Criminal Jury Instructions regarding the initial aggressor exception:
“[N]otwithstanding the rules [of justification] that I have just explained, the Defendant would not be justified in using deadly physical force under the following circumstances: No. 1, the Defendant would not be justified if he was the initial aggressor. Initial aggressor means the person who first attacks or threatens to attack, that is to say, the first person who uses or threatens the imminent use of offensive physical force.
“The actual striking of the first blow or inflicting of the first wound, however, does not necessarily determine who was the initial aggressor. A person who reasonably believes that another is about to use deadly physical force upon him need not wait until he is struck or wounded.
“He may, under such circumstances, be the first to use deadly physical force so long as he reasonably believed it was about to be used against him. He is then not considered to be the initial aggressor under those circumstances, even though he strikes the first blow or inflicts the first wound.
*61 “Arguing, using abusive language, calling a person names or the like unaccompanied by physical threats or acts does not make a person an initial aggressor and does not justify physical force.”
Defendant was convicted of manslaughter in the first degree. The Appellate Division, with one Justice dissenting, reversed, holding that the trial court improperly instructed the jury on the initial aggressor exception to justification (128 AD3d 428 [1st Dept 2015]). The dissenting Justice granted leave to appeal (2015 NY Slip Op 87471[U] [1st Dept 2015]), and we now reverse and remit to the Appellate Division for consideration of the issues raised but not determined on the appeal to that Court.
II.
“It is well settled that, ‘[i]n evaluating a challenged jury instruction, we view the charge as a whole in order to determine whether a claimed deficiency in the jury charge requires reversal’ ” (People v Walker, 26 NY3d 170, 174 [2015], citing People v Medina, 18 NY3d 98, 104 [2011]). In reviewing a trial court’s charge, reversal is only appropriate if “the charge, ‘read . . . as a whole against the background of the evidence produced at the trial,’ likely confused the jury regarding the correct rules to be applied in arriving at a decision” (id. at 174-175, quoting People v Andujas, 79 NY2d 113 [1992]). It is uncontested that a justification charge pursuant to Penal Law § 35.15 was appropriate in this case. In the context of that self-defense charge, an initial aggressor instruction was warranted because the charge was requested and there was an issue of fact on the point.
Hogan’s testimony and timeline placed into issue whether defendant or McWillis was the initial aggressor as to the use of deadly force, especially when considering the brevity and intensity of the altercation. Certainly, there is a reasonable view of the evidence that McWillis was the initial aggressor as to physical force, because he picked up the mop handle and followed defendant before defendant ever used or threatened the use of a gun. However, the jury also could have reasonably concluded that defendant was the initial aggressor as to the use of deadly physical force, because he pulled out his loaded gun and shot Hogan and McWillis before McWillis in fact threatened him with the mop. And while there are instances where a “normally innocuous item may constitute ‘deadly phys *62 ical force’ ” (see dissenting op at 64; People v Dodt, 61 NY2d 408, 414 [1984]), under these circumstances, the jury reasonably could have concluded that the swinging mop handle did not. Thus, the court properly instructed the jury on the definition of an initial aggressor under Penal Law § 35.15.
Notably, the instruction given did not imply or suggest that defendant was the initial aggressor. Rather, the initial aggressor charge explained the law that defendant, in using deadly physical force, was not required to wait until he was struck or wounded if he reasonably believed that deadly force was about to be used against him. Under the charge given, if the jury found the use of the mop handle was deadly physical force, defendant would not be the initial aggressor. The charge, which aided the jury in understanding justifiable use of force in self-defense under Penal Law § 35.15, was properly given based on the evidence, and there is no deficiency requiring reversal.
Here, as the Appellate Division dissent noted, “[n]o matter what the court charged in relation to the initial aggressor issue, [the jury could have reasonably concluded] there was simply no evidentiary support for a finding that defendant was justified in using deadly physical force against McWillis when faced with McWillis’s either threatened or actual use of a mop handle” (Valentin, 128 AD3d at 433 [Saxe, J., dissenting]). Our law has “never required that an actor’s belief as to the intention of another person to inflict serious injury be correct in order for the use of deadly force to be justified, but [it has] uniformly required that the belief comport with an objective notion of reasonableness” (People v Goetz, 68 NY2d 96, 107 [1986]). Thus, the jury could have concluded that defendant’s choice to respond to a swinging plastic mop handle with a loaded and operable gun was not reasonable, especially in light of his prior comments to police about taking the law into his own hands.
Accordingly, the order of the Appellate Division should be reversed, and the case remitted to that court for consideration of the issues raised but not determined on the appeal to that Court.