# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 32
The People &c.,
     Appellant,
       v.
Darryl Brown,
     Respondent.

Clara H. Salzberg, for appellant.
Joey Jackson, for respondent.

WILSON, J.:

Defendant Darryl Brown shot and killed Vonde Cabbagestalk in the lobby of Mr. Brown's apartment building after an argument. At trial, Mr. Brown sought a jury instruction on justification, which the court declined to give. We agree with the trial court

- 1 -

that no reasonable view of the evidence warranted a justification charge, and, accordingly reverse.

I

Mr. Brown and his pregnant daughter lived in an apartment building in the Bronx; Mr. Cabbagestalk was Mr. Brown's daughter's boyfriend and the father of her child. Three witnesses who saw at least a part of the events surrounding Mr. Cabbagestalk's death testified at trial.

The first witness, Yvette Flores, lived across the hall from Mr. Brown. Ms. Flores heard arguing in the hallway. Looking through the peephole in her front door, she saw Mr. Brown and Mr. Cabbagestalk arguing in front of the open door to Mr. Brown's apartment, with Mr. Brown's daughter standing there as well. The argument between Mr. Brown and Mr. Cabbagestalk continued after both men passed out of Ms. Flores' view; shortly afterwards, she heard Mr. Brown's daughter yell, "No, daddy, no!" followed by a loud boom. Ms. Flores left her apartment, saw Mr. Cabbagestalk lying on the lobby floor, and saw Mr. Brown and his daughter re-enter their apartment. She called 911.

A second witness, Sheila Thomas, observed the argument as she was entering the building. Looking through the interior glass door, she saw two men in the lobby, one older than the other. She saw the older man (Mr. Brown) walk away and the younger man (Mr. Cabbagestalk) follow. Ms. Thomas said the older man was walking and the younger man was following him with his hands out and elbows bent so that his palms were up, facing the older man, as if he was "trying to reason" with him. The argument continued after Ms.

Thomas could no longer see them, when suddenly a shot rang out. She saw the younger man fall and heard a woman scream. She then fled outside.

The third witness, Raymond Wolf, a postal carrier, was delivering mail to the building at the time of the incident. When he arrived at the building, Mr. Cabbagestalk and Cordarell Marshall, an acquaintance of Mr. Cabbagestalk's, opened the building's locked door to admit Mr. Wolf.[1] While Mr. Wolf was in the lobby, distributing mail into the residents' individual mailboxes, an older man (Mr. Brown) entered the lobby where the two younger men had been talking, and started arguing with the taller of the two younger men (Mr. Cabbagestalk). Mr. Wolf said he heard the older man say, "Stay away from my daughter, don't come around here." Mr. Cabbagestalk responded, "you can't tell me where to be." According to Mr. Wolf, Mr. Cabbagestalk was "getting in the older guy's face a little bit," "trying to back him down," and Mr. Marshall was trying to calm Mr. Cabbagestalk down.

Mr. Wolf testified at trial that he observed Mr. Cabbagestalk throwing a few punches at Mr. Brown but that he believed those punches did not reach Mr. Brown. Mr. Wolf also testified that Mr. Brown was holding a gun slightly "above waist high" and "pointed away from him." Mr. Cabbagestalk then "swiped" at Mr. Brown's gun, though Mr. Wolf's testimony about the exact number of swings and sequence of events was

---

[1] The identity of Mr. Cabbagestalk's companion was not definitively resolved at trial, but for purposes of the present appeal we will follow the Appellate Division's finding that this individual's name is Cordarell Marshall (160 AD3d 39, 42 n 1).

inconsistent, at times testifying to three swings followed by one swipe, at other times interspersing one swipe amid swings. In any event, Mr. Wolf averred that he could not recall if any of the swings or swipes was with an open or closed hand. According to Mr. Wolf, at some point before Mr. Cabbagestalk's last swing or swipe, Mr. Cabbagestalk said, "if you going to pull a gun out, you got to use it." Mr. Brown did just that, shooting Mr. Cabbagestalk in the chest. When Mr. Wolf first saw the gun, he started up the stairs to the second floor. From his vantage point on the stairs, he did not see "the flash [of the gun firing] or anything," but heard the shot and saw Mr. Cabbagestalk fall.

When the police arrived, they found Mr. Cabbagestalk lying face down in the lobby, dead at the scene with a shell casing next to him. During their canvass of the building, the police spoke to Ms. Flores, who directed them to the Browns' apartment. Mr. Brown admitted the police, where they recovered a semiautomatic Glock pistol in a kitchen drawer. Testing later revealed it was the gun that fired the shell casing found next to Mr. Cabbagestalk's body.

Mr. Brown was indicted for murder in the second degree, manslaughter in the first degree, and criminal use of a firearm in the first degree. Defense counsel asked the court for a justification instruction; the People objected. The court denied the request because the evidence, taken in the light most favorable to Mr. Brown, did not warrant a justification charge.[2] The jury acquitted Mr. Brown of murder in the second degree but found him guilty

---

[2] Contrary to the position of Mr. Brown and the conclusion of the Appellate Division majority below (160 AD3d at 49 n 9), the question of whether the trial court correctly

of manslaughter in the first degree. The Appellate Division, over a two-Justice dissent, reversed, holding Mr. Brown was entitled to a jury instruction on justification (People v Brown, 160 AD3d 39 [1st Dept 2018]). A Justice of the Appellate Division granted the People leave to appeal to this Court, and we now reverse.

II

Mr. Brown's shooting of Mr. Cabbagestalk self-evidently constituted the use of deadly physical force. As relevant here, a defendant is justified in using "deadly physical force" upon another only if that defendant "reasonably believes that such other person is using or about to use deadly physical force" (Penal Law § 35.15 [2] [a]): in other words, both that "he believed deadly force was necessary to avert the imminent use of deadly force [and that] in light of all the circumstances . . . a reasonable person could have had these beliefs" (People v Goetz, 68 NY2d 96, 115 [1986]). However, the Penal Law provides that a defendant is never justified in using deadly physical force if that defendant is the "initial aggressor:" the first person in an altercation who uses or threatens the imminent use of deadly physical force (Penal Law § 35.15 [1] [b]; People v Petty, 7 NY3d 277, 285 [2006]).[3]

---

denied Mr. Brown's request for a justification instruction, including on initial aggressor grounds, is preserved (CPL 470.05 [2]; cf. People v Miranda, 27 NY3d 931, 932 [2016]).

[3] We have no need to consider the People's argument that Mr. Brown was not entitled to a justification instruction because he does not satisfy the subjective and objective criteria of the defense set out in People v Goetz (68 NY2d at 114-15) and its progeny.

"Justification is a defense, not an affirmative defense, and therefore the People bear the burden of disproving it beyond a reasonable doubt" (Matter of Y.K., 87 NY2d 430, 433 [1996]). "[I]n considering whether the trial court's charge to the jury was adequate, the record must be considered most favorably to defendant . . . [and] if[,] on any reasonable view of the evidence, the fact finder might have decided that defendant's actions were justified, the failure to charge the [justification] defense constitutes reversible error" (People v Padgett, 60 NY2d 142, 145 [1983]). However, "when no reasonable view of the evidence would support a finding of the tendered defense, the court is under no obligation to submit the question to the jury" (People v Watts, 57 NY2d 299, 301 [1982]).

Mr. Brown's argument that he was entitled to a justification charge rests entirely on Mr. Wolf's testimony; the testimony of the other witnesses does not provide any basis for a justification charge. Even fully crediting Mr. Wolf's testimony, it is uncontested both that Mr. Cabbagestalk was unarmed and that Mr. Cabbagestalk swiped at the gun only after Mr. Brown wielded it. On the facts of this case, taken in the light most favorable to Mr. Brown, we hold that the trial court's refusal to charge justification was not error, because Mr. Brown was the initial aggressor as a matter of law.

The "initial aggressor" is the first person who uses or threatens the imminent use of physical force in a given encounter. However, even if someone is the initial aggressor with respect to mere physical force, another person may be the initial aggressor with respect to *deadly* physical force. If mere physical force is employed against a defendant, and the defendant responds by employing deadly physical force, "the term initial aggressor is

properly defined as the first person in the encounter to use deadly physical force" (People v McWilliams, 48 AD3d 1266, 1267 [4th Dept 2008]).[4]

To determine who the "initial aggressor" is, then, both the sequence of the attacks (or imminently threatened attacks) and the nature of those attacks matter: which attacks were "physical force" and which attacks were "deadly physical force?" "Deadly physical force means physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury" (Penal Law § 10.00[11]). Deadly physical force, we have held, encompasses not merely the striking of the first blow or infliction of the first wound. It also encompasses acts by a person that cause the defendant reasonably to believe that the defendant is facing the "imminent threat" of deadly force (see People v Valentin, 29 NY3d 57, 60 [2017]). As for what constitutes such a threat, we held in People v Dodt (61 NY2d 408 [1984]) that the imminent threat to use a gun constituted the threat of deadly physical force even if the gun is never fired. "The threat presented by a gun does not depend to any significant extent on the manner in which it is used. So long as a gun is operable, it constitutes deadly physical force, and a threat to use a gun, such as was made here, can only be understood as a threat that the weapon is operable" (id. at 415). Thus, the imminent threat to use a gun against another is, necessarily,

---

[4] See also People v Valentin, 29 NY3d 57, 61 (2017); People v Kerley, 154 AD3d 1074, 1076 (3d Dept 2017); People v Daniel, 35 AD3d 877, 878 (2d Dept 2006); People v Walker, 285 AD2d 364, 365 (1st Dept 2001); People v Mickens, 219 AD2d 543, 544 (1st Dept 1995); CJI2d[NY] Justification: Use of Deadly Physical Force in Defense of a Person, Penal Law § 35.15 (2).

a threat of deadly physical force. The first person to make such an imminent threat is, therefore, the initial aggressor with respect to deadly physical force.

Those principles control this case. Here, Mr. Brown placed his gun in a position where he was readily able to aim and fire it imminently,  and did so before Mr. Cabbagestalk's efforts to "swipe" at the gun. The circumstances surrounding that act— where a verbal altercation between Mr. Brown and the victim preceded it, where the victim was unarmed, where an armed Mr. Brown pursued the victim into the building's lobby, and where both Mr. Brown's daughter ("No, daddy, no!") and the victim himself ("you going to pull a gun out, you better use it") expressed their subjective belief that Mr. Brown had threatened the imminent use of deadly force—provide further support for the trial court's conclusion that Mr. Brown's drawing of a gun here could only be understood as an imminent threat of deadly physical force.

Even the Appellate Division majority, holding that Mr. Brown was not an initial aggressor, nonetheless characterized Mr. Cabbagestalk's errant punches as "undeterred by [Brown's] weapon" (160 AD3d at 45). Mr. Brown's display of the gun as a "deterrent" was, on this record, a deterrent precisely because it threatened the imminent use of deadly physical force. We reached the same conclusion in People v Magliato (68 NY2d 24 [1986]), in which we held that the defendant was the initial aggressor when he drew his firearm to "scare off" the victim, because the gun was "readily capable of causing death or physical injury" (id. at 30) as those terms are defined in Penal Law § 10.00(11). We explained "the risk of serious injury or death and the capacity presently to inflict the same

are central to the definition [of deadly physical force], not the consequence of defendant's conduct or what he intended" (Magliato, 68 NY2d at 29).

Because Mr. Brown's drawing of his gun under these circumstances constituted the imminent threat of deadly physical force, the "initial aggressor" rule bars Mr. Brown from claiming justification unless a reasonable jury could conclude either: (1) that Mr. Brown withdrew from the encounter after drawing his gun, communicated that withdrawal to Mr. Cabbagestalk, and Mr. Cabbagestalk thereafter used or threatened imminent use of deadly physical force (Penal Law § 35.15[1][b]), or (2) that Mr. Cabbagestalk himself was the initial "deadly force" aggressor. No reasonable jury could reach either conclusion based on the evidence in this case, even viewing the evidence in the light most favorable to Mr. Brown (as we must).

First, there is no evidence that Mr. Brown withdrew after drawing his gun. Instead, after drawing his gun, Mr. Brown shot Mr. Cabbagestalk dead. All testimony as to Mr. Brown carrying a firearm indicates that Mr. Brown had his firearm out during all or part of the argument in the lobby—there was no withdrawal between the imminent threat to use the gun (the first threat of deadly physical force) and the grim realization of that threat.

Second, Mr. Cabbagestalk was not the initial deadly force aggressor because of his "swipe" at Mr. Brown's gun. No reasonable view of the evidence supports the proposition that Mr. Brown was ever threatened by Mr. Cabbagestalk with the imminent use of deadly force prior to the point at which Mr. Brown drew his gun. Mr. Cabbagestalk sought to swipe the gun only after Mr. Brown had first threatened the imminent use of deadly

physical force by displaying his gun, leaving Mr. Brown as the initial deadly force aggressor. There is no evidence that Mr. Cabbagestalk was ever armed; indeed, both Mr. Wolf and Ms. Thomas testified that Mr. Cabbagestalk had nothing in his hands. As for Mr. Cabbagestalk's argument with Mr. Brown, as we said in Valentin, "calling a person names or the like unaccompanied by physical threats or acts does not make a person an initial aggressor and does not justify physical force" (29 NY3d at 61), let alone deadly physical force.[5] As the dissenting Justices below explained, "when defendant became the first and only participant in the altercation to threaten the use of deadly physical force . . . he did so without any basis for fearing that Cabbagestalk was about to use such force on him" (160 AD3d 39, 60 [Kahn, J. dissenting]).[6] To hold that one who wields a gun during a nondeadly altercation may claim justification because the unarmed victim subsequently attempted to swipe, grab or dislodge the gun would be to disregard the requirements of Penal Law § 35.15.

---

[5] There is no evidence in this case remotely akin to that presented in People v Petty (7 NY3d 277 [2006]), in which we held a reasonable jury could infer an imminent threat of deadly physical force from the victim's unambiguous, credible death threats uttered repeatedly to the defendant over an 11-day period. The uncontroverted evidence in this case is that Mr. Cabbagestalk did no more than argue with Mr. Brown before Mr. Brown drew his gun.

[6] Mr. Brown further argues that the reasonableness of his alleged belief that Mr. Cabbagestalk threatened the imminent use of deadly physical force is demonstrated by the jury's decision to acquit him of murder, because the acquittal shows that Mr. Brown did not intend to cause the death of Mr. Cabbagestalk. But whether proof beyond a reasonable doubt existed that Mr. Brown intended to kill Mr. Cabbagestalk is a different question than whether Mr. Brown reasonably believed he himself was threatened with deadly physical force.

## III

In holding that Mr. Brown is not entitled to a justification charge on this record, we do not disturb in the slightest "the well-settled principle that, in considering whether the trial court's charge to the jury was adequate, the record must be considered most favorably to defendant [and i]f, taking that view of the record, the evidence supports the defense of justification, the trial court should instruct the jury as to the defense and must when so requested" (Padgett, 60 NY2d at 144-45). However, where, as here, there is no reasonable view of the evidence that Mr. Brown was anything other than the initial aggressor in his use of deadly physical force, he is not entitled to a jury instruction on justification.

Accordingly, the order of the Appellate Division should be reversed and the case remitted to the Appellate Division for a determination of the facts and issues raised but not determined on appeal to that Court.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order reversed and case remitted to the Appellate Division, First Department, for determination of the facts and issues raised but not determined on appeal to that court. Opinion by Judge Wilson. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia and Feinman concur.

Decided May 7, 2019