People v Douglas (2021 NY Slip Op 06858)





People v Douglas


2021 NY Slip Op 06858


Decided on December 8, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 8, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
LEONARD B. AUSTIN
ROBERT J. MILLER
FRANCESCA E. CONNOLLY, JJ.


2018-08613
 (Ind. No. 608/17)

[*1]The People of the State of New York, respondent,
v
Saheim Douglas, appellant.


Thomas A. Kenniff, Mineola, NY, for appellant.
Joyce A. Smith, Acting District Attorney, Mineola, NY (Judith R. Sternberg and Madeline Collins of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Angelo A. Delligatti, J.), rendered June 13, 2018, convicting him of attempted murder in the second degree, criminal use of a firearm in the first degree, attempted assault in the first degree, criminal use of a firearm in the second degree, criminal possession of a weapon in the second degree (two counts), reckless endangerment in the first degree, assault in the second degree, assault in the third degree, and resisting arrest, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
On September 25, 2016, shortly after midnight, two men, with another man present, engaged in a shootout at the intersection of Terrace Avenue and Bedell Street, in Hempstead. An innocent bystander was injured when bullets struck her car, shattering its windshield.
ShotSpotter, an acoustic gunshot detection and location system, provided notification to law enforcement agencies that shots had been fired at the subject intersection. Video surveillance footage obtained from buildings located in the vicinity of the crime scene depicted two men standing on the southeast corner of the subject intersection, and a third man, later identified as Darren Devane, standing on the northwest corner. The videos, among other things, showed one of the men who was standing on the southeast corner fire an AK-47 assault rifle across the subject intersection before fleeing the scene. After arriving at the scene, Nassau County Police Department personnel recovered from the southeast corner a piece of a black plastic magazine and spent and unspent ammunition. Subsequently, through DNA testing, blood belonging to the defendant was identified on two of the recovered AK-47 cartridges.
During the evening following the shooting, the defendant sought treatment at Jamaica Hospital, in Queens, for a gunshot wound to his left hand. Due to the fact that the defendant had been shot, hospital personnel contacted the New York City Police Department (hereinafter NYPD). At the hospital, the defendant provided an NYPD detective with two different locations in Queens for where the shooting that caused his injuries took place. NYPD personnel investigated those locations, and discovered that ShotSpotter had not detected any shots fired at either location during the time frame for the shooting provided by the defendant. No calls to the 911 emergency number [*2]had been received indicating that a shooting occurred in either location, and canvassing of the two locations did not produce any witnesses or video surveillance demonstrating that a shooting had occurred. Since it did not appear that the shooting which caused the defendant to be injured occurred in Queens, as reported by the defendant, the NYPD contacted other law enforcement agencies, including the Nassau County Police Department, to report that a gunshot victim had been treated at Jamaica Hospital.
Further, after the defendant, who did not produce identification upon request, provided a fake name, birth date, and address to the responding officers, one of the NYPD officers took a photograph of the defendant to forward to the facial recognition unit. Subsequent to the defendant's discharge from Jamaica Hospital, the facial recognition unit identified the patient as the defendant. This information was also relayed to the Nassau County Police Department.
In March 2017, the defendant was arrested and subsequently indicted for, inter alia, attempted murder in the second degree and criminal use of a firearm in the first degree. Upon his arrest, the defendant made certain statements to the police, including that the Nassau County Police Department "got [him] good," and that he never should have gone to Hempstead but would "only do two or three years." The jury returned a verdict finding the defendant guilty of the charged crimes. The defendant appeals.
In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633, 645-646).
The defendant's contentions that the act of a Nassau County Police Department detective powering on the defendant's cell phone and calling it using the phone number the defendant had provided to the NYPD at Jamaica Hospital constituted an unlawful, warrantless search and that the Supreme Court improperly pressured the jury to reach a verdict when giving certain instructions to them before they were excused for the evening during the course of deliberations are unpreserved for appellate review (see CPL 470.05[2]), and we decline to review these issues in the exercise of our interest of justice jurisdiction (see People v Alston, 188 AD3d 1235).
Contrary to the defendant's contention, the Supreme Court properly denied his request to charge the jury on the defense of justification. "In considering whether a justification charge is warranted, a court must view the record in the light most favorable to the defendant and 'determine whether any reasonable view of the evidence would permit the factfinder to conclude that the defendant's conduct was justified. If such evidence is in the record, the court must provide an instruction on the defense'" (People v Taylor, 150 AD3d 768, 769, quoting People v Petty, 7 NY3d 277, 284).
Here, there is no reasonable view of the evidence that would permit the jury to conclude that the defendant's conduct was justified (see People v Taylor, 150 AD3d at 769; People v Cotsifas, 100 AD3d 1015, 1015). Although it is undisputed that the video surveillance footage shows that Devane fired at the defendant and his companion first, the evidence demonstrated that, before any shots were fired, the man in the video surveillance footage, who was identified by the police as the defendant, pulled an AK-47 assault rifle out of a bag and his companion yelled that he would "air the block out." Thus, the evidence was not sufficient to support a finding that the defendant was not the initial aggressor (see Penal Law § 35.15[1][b]; People v Brown, 33 NY3d 316, 323).
The defendant's contention that he was deprived of the effective assistance of counsel is without merit. Viewing defense counsel's performance in totality, the record reflects that defense counsel provided meaningful representation (see People v Benevento, 91 NY2d 708, 712; People v Huertas, 186 AD3d 731, 734; People v Culajay, 179 AD3d 833, 834).
Regarding the sentence, upon the defendant's conviction of criminal use of a firearm in the first degree, the Supreme Court was authorized, pursuant to Penal Law § 265.09(2), to impose a determinate term of imprisonment of five years, to run consecutively to the sentence imposed upon his conviction of attempted murder in the second degree (see People v Sosa-Marquez, 177 AD3d 1003, 1005). The defendant's contention that the court imposed a harsher sentence as punishment for exercising his right to a jury trial rather than accepting a plea offer is unpreserved for appellate review (see People v Mujica, 146 AD3d 902, 903). In any event, "the fact that the sentence imposed after trial was greater than the sentence offered during plea negotiations does not, standing alone, establish that the defendant was punished for exercising his right to trial" (id. at 903; see People v Kocot, 167 AD3d 940, 941). Moreover, the sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
MASTRO, J.P., AUSTIN, MILLER and CONNOLLY, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court